The case number is 120-0502-WC Marvin A. Brustin, Appellant v. Illinois Workers' Compensation Commission, Brustin and Lumblad, Appellee. Ms. Rosen, you may proceed. Thank you. May it please the Court, I'm Leslie Rosen. I am representing Marvin Brustin, who was the petitioner in this case. This is an appeal from the Commission's decision that just affirmed the arbitrator's decision that Mr. Brustin's injury did not arise out of his work. We disagree with that. The facts are primarily undisputed, almost exclusively undisputed. Mr. Brustin is the lead partner, the named partner at the firm of Brustin and Lumblad. He normally goes to work five to six days a week, between nine to five. One day, he was going to go to work at 10 because he had an appointment with his most important client, a guy who was the head of the labor union in Chicago. He was a personal client. He referred relatives to him. He referred labor cases to Mr. Brustin. He was a very, very important client. He's an enormous client. Mr. Brustin also knew that the client was very edgy and annoying. Not annoying, I take it back. He was very impatient. If Mr. Brustin didn't show up on time, or sometimes he didn't pick up the phone quickly enough, the guy would hang up and he'd be irate. Ms. Rosen, if I could interject the question, the accident occurred while the claimant was awaiting a bus, is that correct? He wasn't awaiting, he was walking to the bus. Walking to the bus, okay. He wasn't just standing still. He was not on the employer's premises when the accident occurred, correct? Absolutely correct. Okay, so you're aware of the general rule that generally speaking, and there are exceptions, which I think you're probably going to try and fall within, an injury is not compensable if it happens away from the workplace while the claimant is traveling to and from the workplace. You acknowledge that? Of course, that's the basic rule. And we wouldn't be here if Mr. Brustin was just sauntering to work on a regular day, and he slipped and fell, and tripped and fell, or if he was walking to the bus, we wouldn't be here. But this isn't what happened here, and so we do fit under an exception. That's the coming and going rule. And Mr. Brustin was found that he was out because this was not a coming and going case. They thought it was just a coming and going case. He got a call that his client, this very important client, had arrived two hours early. So Mr. Brustin rushed and got out of the house and got downstairs and was going to the bus stop when he did trip and fall on an uneven sidewalk. So the coming and going rule is the basic rule. There are three exceptions to it. On-call employee, special mission, and traveling employee. And I've briefed all three of them. I'd like to speak today about the special mission and the on-call, and I'll rest on my brief on the traveling, because all I have for that is that he had an at-home office that he used some time, and it's not a, whether it's a satellite office or not is your decision, but it certainly fits under the other two. Mr. Brustin testified he was an on-call employee. He was the man who handles this firm. It's his firm, I mean his with Mr. Lundblad, but it's Brustin and Lundblad, and this is his client, and he handles all emergencies. They have a rule at the firm that important clients are not to be kept waiting. So, and he's afraid of causing any trouble. So for that reason, he's the one who's got to go in. Nobody else is there. The guy gets there at eight in the morning for a 10 o'clock appointment. So Larson section 1611 talks about the special mission exception to the coming and going rule. Are we on the special mission or the on-call exception? No, we're, I'm sorry, we're, I'm going with the special mission first. I'm sorry. Okay. I'm gonna go with that. He's on a special mission, and a special mission, the special errand rule may be stated as follows. When an employee having identical time and space limits on his employment makes an off-premises journey, which would normally not be covered under the usual coming and going rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey or the special inconvenience, hazard, or urgency of making it in a particular circumstances is itself sufficiently substantial to be viewed as an integral part of the service itself. And you're quoting Larson now, correct? Yes, I am. That's section 1611 in 1 Larson's Workers' Comp. I also noticed you did quote a case from the I have an obvious question. Does any Illinois case recognize Larson's doctor? International Art Studios versus Industrial Commission. It was an Illinois Supreme Court case. He was on a special mission there. This was a guy who's at work at night. He's asked to stay late. He says, well, fine, I'll stay late, but I've got to go pick up my wife. The supervisor says yes, and on the way back from picking up his wife and taking her home, he has an accident. And that was deemed compensable. My opponent only argues that it's distinguishable because the petitioner in that case was being paid overtime. And Mr. Bruston, he's not an hourly employee or salaried employee. But Mr. Bruston does have an identifiable time and space limits on his employment. He goes to work Monday through Friday, nine to five. And on Saturday, he goes half a day. And he was hurrying. And hurrying is a big deal. We also have another case in Illinois that I cited, Justice Hudson was Benjamin Sanborn versus Industrial Commission. It's an old case. It's from 1950. But their employee was going on a Saturday, she was asked to take something to the post office. So she goes to the post office on a Saturday, and she gets in an accident. And the Supreme Court held that she was on a special mission because she was carrying her employees check to the post office. That was the first time she'd been asked to do that, according to the facts and Sanborn, correct? I believe so. But I'm not 100% on that fact. But in my case, there's nothing in the record to suggest that Mr. Lundblad was asked to come in early on any regular basis or that he ever did it before. This was this was all as far as this record shows. This was the only time he got the call at eight from his office manager that this very important union guy was in the office already for a 10 o'clock appointment. So he rushed, he hurried, he was anxious. He was planning on going in that day anyway. So later, later, 10 o'clock, he was planned two hours later. And that's why I said at the beginning, if Mr. if this happened at 930, and he was just on his way there, just his regular way there, I wouldn't be here. We wouldn't have a case because that would go in the coming and go. Any decision we make could be potentially precedential. So let me ask you this trying to put this in things that happen every day in the real world. So if somebody works at a factory, who normally gets in at 10, and the boss says, Hey, would you mind coming in early at nine? Anytime an employee is injured on the way into work, that's a special mission. No, I didn't say that. I didn't say that at all. And that guy, the employee says, Okay, but in this case, what makes it special is not only the fact that he's coming in early, but that he's hurried. And he's anxious because of the importance of the reason that he's coming in. How is that a little subjective? How is one to determine somebody is anxious or hurry? Hurry, you can hurry, you can, in this case, determine almost maybe objectively, he got the call at eight, and he was on the street before eight by 815. That's hurrying. He wasn't dressed before that. He was he's testified he was hurrying. There was he was cross examined on this. My opposing counsel tried to impeach him on this point with his incomplete and unsuccessful attempted impeachment, but there's no here there's no dispute. And I think this goes when you when you decided this question of how do you determine if it was they were hurrying and go to the it goes to the neutral risk issue, which is an issue that my opponent raised in his epilepsy brief, he says, Come on, he's just on the street. It's a public sidewalk. It's a neutral risk, it could happen to anybody. And there are a few cases that we cited that talk about when you're hurrying something that could normally be a neutral risk becomes not a neutral risk anymore. The best case on that is William A. William GC CEAS versus Industrial Commission 261, they'll have third 630. In that case, very interesting case with the dissent, but the majority of this court ruled that when an employee close to her boss often asked her to take things down late, do things late at work, close to five o'clock, she's she's got to take something to the FedEx office. She's rush goes down the stairs, and she's in a hurry. There's no question she's in a hurry. People saw that she was in a hurry. And she she she falls one step before the end, she falls and really it ends up dying as a result of the fall because she's got to get to the FedEx office by either five o'clock or six o'clock and she's got to get home after there. So so they say hurrying takes it out. It the risk of injury is enhanced relative to the general public. So you can decide that. But there's another case I thought I stopped because I thought Justice Pierce had a question. His yellow light is yellow. But I'll continue. The other is Knox County YMCA versus Industrial Commission, a newer case, not so new 311 LF 3880 from the third district from 2000. In that case, an employee of the Y was required to go directly from her job of a drink. And then she went to the meeting. And on her way out, even she wasn't she hurried there, but she was told she could leave the meeting. So on her way out, she's going down the stairs. It's another staircase story. She's going down the stairs with her sandwich, her drink in her purse. And she thought she was at the bottom of the stairs and she wasn't and she fell. And that too, it was deemed compensable because she was distractible and she had been hurrying. So each case requires some evaluation. But you can do that. Of course, you can do that. So it's not a neutral risk. It's not just he's called to come in early. He's called he's rushing. There's no question he's rushing for a very good reason. He doesn't want the client to leave. So I say he's on a special mission. And but beyond that, I really like the argument that he's an on-call employee. And I'll be very candid about this. My client's application for benefits says he's a traveling employee on a special mission. But he gets to the you saw that Justice Kavanaugh. So it's very interesting. The arbitrator only determines that he's he's this injury did not arise out of his work and that he was not a traveling employee and not on a special mission. And he said he was and it was because he was just going to work that he wasn't on a special mission, but he wasn't just going as I've just explained. But in any case, as soon as he there was no question, my client testified he was an on-call employee. Nobody there was not any any cross examine effective cross examination on that point. And it was not addressed, but it was immediately addressed. When my Mr. Bruston files his application to the commission, he says the court didn't consider the arbitrator didn't consider whether he was hurrying. And it didn't consider that he was an on-call employee. An on-call employee is by itself one of the exceptions to the general coming and going rule. And based on Supreme Court rule 366, this courts can can determine that he was an on-call employee. Were there any other occasions where Mr. Bruston was called in by his firm that he's the president of correct? I don't know if his title, but he's the name partner. It's Bruston and Lundblad. Any testimony that he's regularly called up and he's has to rush in from home? Never. No, there's no testimony of that. Little qualifies him as an on-call employee. He's the one because he is he testified he's the firm has a policy and this was undisputed. That firm has a policy that an important employee, an important client like Mr. Oback is not to be kept waiting and he's the one to tap handles these kind of situations. If he had been unavailable, Mr. Lundblad would have been called, but he was that the guy was not to be kept waiting under any circle. That did not come up and I do not think I do not know. I do not know that this is in writing, but this was undisputed testimony. I mean, this is a small firm. I mean, if you look up the firm, there's Milo, Lundblad and Marth Bruston, and then there's a few associates and that's it. It's a small personal injury firm. It's not this isn't Mayor Brown, you know, it's with a lot of policies. I don't know if they have any, but that didn't come up and nobody disputed that it was the policy and the rule of the firm. So I can tell you it's on-call cases, on-call employees. I gave you four cases from Illinois where people are deemed on-call employees and they're factually distinguishable, but very similar. The first is Keller versus Industrial Commission about a police for conditions. He decides he's going to write a citation. He gets in an accident, compensable because he was already working. Well, he was right. He was considered on that case to already be on duty when the accident happened. But he wasn't, but he wasn't on duty. The fact that he formed an intention in his mind, there was no policy that said, ah, if you're coming to work and you see something that this is your job, you've got a police officer. If you see somebody violating the law, he's going to follow up and he's going to execute his duties, correct? I, that's not said, there's nothing in the opinion that says he has to before he gets to work. He's not at work yet. He doesn't, we don't know that. It makes sense, but it's not, that's, that's not what it is. And the same thing, another, another case, another police officer. Ms. Rosen, the red light has gone on. So sorry. Time is up. You'll have time in reply. I can't believe it. I spent all the time. Thank you. Thank you. Mr. Pellish, you may respond. Thank you, members of the court and Ms. Rosen. Let me start by trying to address some of the questions raised by Justice Hudson. The accident itself did not occur on the employer's premises. The accident itself occurred on a public sidewalk, a sidewalk owned and maintained by the city of Chicago. Mr. Bruston attempted to pursue a civil action against the city of Chicago as the owner of the sidewalk. Based on factual findings and evidence presented, there was found to be a de minimis change in the elevation of the sidewalk itself and the circuit court of Cook County dismissed on a motion for summary judgment. What's the relevancy of that, Mr. Pellish, in this comp case? I think it goes to the issue of where the accident occurred. Counsel insisted that this matter did not happen at the bus stop, but when you look at the complaint and you look at all the testimony adduced, this was not an accident occurred as he was transversing his public street, but actually while he was standing on the sidewalk waiting for a bus. I guess I listened to Ms. Rosen's comments and I'm somewhat troubled by her reference that it was such an important meeting that her client was hurrying to get to the office presumably early. If you look at the entire record, Mr. Bruston says, I'm working, I'm walking at my normal hurried pace, the pace he uses every day as he's getting to the office. He was using public transportation. He took no additional steps to take extraordinary travel, nor did he say that the manner in which I got to work, that I was walking at an extraordinarily hurrying pace, and that he gave no indication that his actions itself from a neutral observations were anything more than his normal behavior. To the questions that were posed earlier, I'm unclear how one could administer a worker's compensation act and say that the mere subjective belief that an individual was hurrying is sufficient to take it out of the ordinary rule that traveling to and from work are not covered. Well, let's get this scene straight, maybe. On one hand, I'm hearing that you say he was not going to the bus stop. Is that correct or incorrect? I believe he is at the bus stop, which was a public sidewalk when the incident occurred. He was not leaving his apartment building. He was not hurt while he tripped on a sidewalk going from apartment building as he was walking to catch the Michigan Avenue bus. He was tripped on the public sidewalk while he was waiting for the Michigan bus to arrive. So he was stationary and walking towards the bus door. Is that right when he fell? I'm not sure if he was walking towards the bus door as much as he was standing on a public sidewalk, and he lost his footing. I think it's a better way to describe it. There was no indication that he was bumped, pushed. There was no indication that there was any cause for it other than clumsiness, I guess, is probably the better way to describe it. Wasn't there a description, I'm not sure that it matters, but that there was uneven sidewalk, a cracked pavement that he tripped on? I would say that he testified that there was a crack in the sidewalk. I believe the finding that it was a de minimis change in the elevation is sufficient evidence to say that there really was not a crack as we view it, both from a liability perspective and under the Workers' Compensation Act. Does the nature of the impediment or problem that caused him to fall really relevant? I believe it's not. I believe that if one was to ignore the neutral risk analysis and apply the question of whether or not he's a traveling employee and whether the risk associated with getting to your office is a risk that's distinctively associated with his employment is probably a more appropriate analysis. This is not a situation, for example, where the individual, Mr. Brusson, was a truck driver who is transversing stairs either at his company's building or at a place where he is making a delivery. This is not a situation where it's an individual who is riding the circuits, whether he's a salesman, a judge, or anything along those lines. He is an attorney licensed to practice law who has one principal place of business, his office. He was asked to come in or he was asked to deal with the situation when the office manager called him to say that Mr. Babcock, which was perceived by Mr. Brusson to be an important client, had arrived early. You'll find that the record is devoid as to whether or not Mr. Brusson talked to Mr. Babcock. I submit that he, in fact, didn't. That he took it upon himself to get dressed, to shower, and then to leave his apartment, which he chose to live at, and get to the office earlier than he intended to do. Mr. Pelish, I think we're familiar with the basic facts. Can you comment on the two specific exceptions that she honed in on? She spent time talking about the special mission exception to compensability or to non-compensability, and she said that he qualified for compensation under the on-call doctrine. Can you address those two specific exceptions that she has raised? Sure. The cases that she cites with respect to being an on-call employee are those individuals for which there was either a statutory duty to act in a certain manner, or in which the individual was acting pursuant to specific instructions. If, in fact, an on-call employee, and she cites a situation where the individual, I believe, returns home to pick up his wife that he was working. He had already arrived at his employer's premises. He then was working overtime. The employer asked him to stay beyond his normal work schedule. He, in fact, then got permission to go pick up his wife. As he picks up his wife, he then returns to his employer as directed, and he gets into an unfortunate accident. The Workers' Compensation Act, as asked earlier, it was intended to protect employees against risks which are peculiar to the nature of the work that the individual is employed in. Mr. Bruston is a lawyer. He's a good lawyer. He is a successful lawyer. He sits in his office. He negotiates settlement. He probably takes actions which are related to pursuing a civil action. He is not a truck driver. He is not a policeman. And the fact that counsel will say that he is an on-call employee, therefore it's compensable, isn't necessarily true. And the easiest illustration would be the police officer who was asked earlier, and I agree, who has a statutory duty to promote safety and the health and welfare of the general public 24 hours a day, seven days a week, is out duck hunting or deer hunting or doing something along those lines, and he's carrying a gun, a rifle, or anything to that effect to pursue his activities. He's a 24-hour on-call employee. He's carrying a gun, and if he testifies, well, I'm carrying a gun because I'm required to, that doesn't make it that he's an on-call employee to be covered under the workers' compact. Mr. Polish, let me ask you this. The way Ms. Rosen has characterized this, if a law firm has a policy, under certain circumstances, let's assume it was established and memorialized as a policy, and under certain circumstances, a lawyer can be called in unexpectedly to the firm to attend to these clients. Is that not possible? Is there anything that precludes a lawyer from being an on-call employee? I beg to differ with the categorization made by Ms. Rosen. I take Mr. Brusson's testimony to mean that if, in fact, situations arise with Mr. Babcock that he is to be consulted with and get involved in those situations, okay? It doesn't mean that he has to come into work. It could simply be that, in fact, Mr. Babcock, based on the testimony of Mr. Brusson, is an important client. He could have tried talking to Mr. Babcock. He could have told Mr. Babcock via the office manager or any other attorneys who were there, reminding him of the 10 o'clock appointment, reminding him that Mr. Brusson would be coming in, but instead, he took it upon himself to leave, as I said, get dressed, shower, take mass transit as he does every time he says when he goes to the office. All right, so in other words, you're saying there was no established firm or moralized policy that any time this client showed up, Mr. Brusson had to go in. That's right. The record doesn't reflect that. And Brusson never testified to that, did he? No. I believe Mr. Brusson simply said was that there is what he called Babcock rule, meaning that if there were situations arose with this special client, important client, he was to get involved in all dealings with it. I'm a little concerned with the application of what Ms. Rosen is proposing. If what makes it special is the fact that Mr. Brusson needed to come into work versus talking to the person by phone merely because this was an important client, I shudder to think of all the cases that we're now going to be flooded with. And let me just illustrate that. Young associate is working at a law firm. His hours are nine to five. He was given a project. He was given a project by the partner to say, you need to prepare this memorandum, and we're going to be presenting it to our client this afternoon. It was special to the individual, and it might be special to the firm, but no one told that associate that he better come in early to make sure that it's perfect, that all the citations are there, shepherd eyes and all that. He imposed that pressure onto himself that he thought this project was special. So the special mission, if Ms. Rosen is to be accepted in her argument, would simply say any time an attorney or any time and any employee in the office building perceives that they're being asked to come in and do something and participate in a firm presentation or get work done. Therefore, it becomes special because they're coming in before their normal work hours. And that's unadministerable. How do you create a system in which you're going to say to every individual, by the way, we know your set hours are nine to five or eight to four. If you choose to come in, I'm sorry, I can't tell. Is that yellow or green? I'll tell you when it's red. Thank you. If in fact, you're forced to come in and choose to come in early by your own, how then can we say to that individual that you are entitled to get all these benefits? More importantly, if I accept Ms. Rosen's argument that someone's a traveling employee because they're on a special mission, what happens when the person returns home? The person says, well, I've been a traveling employee all day. I came in early. And while I came home, my normal route, my normal means of transportation, I had an accident. At that point in time, the individual is going back to his domicile, his residence, but we still have that label now that he's a traveling employee because he came in earlier than he normally does based on self-imposed concerns. Mr. Bruston had a valuable client. I understand that. Mr. Bruston wanted the firm to flourish. I understand that. He too wanted a profit by maintaining a relationship with Mr. Babcock. And he acknowledged in his testimony that there were no dire consequences by him not meeting with Mr. Babcock that day. I don't understand how an individual who is told by her boss to go to the post office with a check and get the postage meter uploaded or an individual, as Ms. Rosen argues, who's walking down with a package to be delivered to Federal Express again on the employer's premises is consistent with an attorney who chose where to live, who's commuting on his normal means, but the only thing that was different was that he was coming in earlier. Thank you. Your time is up. Thank you, Mr. Pelley. Thank you, please. Ms. Rosen, you may reply. Okay. First of all, at the end of his argument, Mr. Pellish was collapsing my arguments. He was collapsing special mission with traveling employee. And I wasn't arguing about traveling employee. I was arguing just special mission. So that's wrong. Okay. First of all, I'll be very quick. Third party claims are very common. We all know with these cases, with cop cases. So that point that a civil case didn't go anywhere, it was dismissed as summary judgment, completely irrelevant. Next, that he didn't take a taxi. Mr. Pellish is insinuating, well, if this was really important, he would have taken a taxi. But Mr. Bruston testified he didn't take a taxi because buses were the fastest. So that was it. He wasn't hurrying for his personal purpose. If this had been for his personal purpose, we would be out of the box. If the guy just thought he should speed walk on his way to the bus stop or speed walk on the way to work, we'd have no case because that would be personal business and that would not apply here. So the question, was he standing still? Was he at the bus stop? There are photographs of the sidewalk in the record, but I do not believe he was not standing still. This wasn't that he lost his balance when he was standing there. He was going to the bus stop and the sidewalk was there. He was looking around. Is the bus coming? Apparently over at Michigan Avenue, there's a cutout and it's so sorry about this. It's turned that off. There's a cutout and he was looking to see if the bus was coming. It doesn't matter that he wasn't pushed or bumped because he wasn't standing still. So those points that Mr. Pellish made, I think are irrelevant. Likewise, it's irrelevant that the circuit court held that it was de minimis. That's irrelevant. And going to whether he hurried or not, Mr. Pellish actually helps my case. He says he got dressed and he showered in 15 minutes and he agrees. If that's not hurrying, what is? I mean, got dressed and showered and got to the bus stop within 15 minutes of being called. He was responding. It wasn't an express direction. We have a policy here that says you're going to do it. But Mr. Pellish didn't cross-examine Mr. Bruston and say, well, Mr. Bruston, could you have just asked to talk to the guy on the phone and tried to say, you'll be there in two hours? No, that didn't happen. And if you look at Mr. Bruston's testimony carefully, you can see this was such an important client to him that he did not believe that sort of response would have sufficed. So it was it. The injury was particular to this work. That's all you could say. Just, I don't know. The case law that I cited didn't involve police officers. Neither case involved police officers referred to any statutory duty. There may very well be one. Mr. Pellish talks like it's everybody should know that they're on call 24 seven. He didn't cite a statute to you. He didn't cite a statute in this brief. And I think you can't just say that. Without some authority. Because I could have responded to that if that was in the brief. But you can take this at a case by case basis. Justice Hudson, you seem most concerned that this could be precedential and it could be setting a bad precedent if anybody could just say, well, I'm coming in. Did I say that or did Mr. Pellish say? No, you did. You asked me. You said this could be precedential. And, you know, but it's not about just coming in her coming into work early. It's not. It's just it's about being at a case by case basis. You can see that he was hurrying because of the work and it was a part of the work. And so that his injury was a rose out of his work. And the case law supports that. That hurrying does play a part. And that's up to the parties to determine. To establish the hurrying. And that makes a difference in both of those cases, which involve neutral risks. There was in the case where the woman fell down, the first case where the woman fell down the stairs, the cease Williams, she cease. There was nothing wrong with the stairs. It was the office was two story building. There was no elevator. She walked down the stairs, but the stairs weren't in her office. They were outside of the office. They was part of the egress. Yes, but wasn't she carrying considered to be carrying out? She was hurrying because she was anxious to carry out the employer's directions. Yes, to get to the FedEx box. Well, so who directed Mr. Bruston to hurry? Well, the office manager told him the guy was there. And it's Mr. Bobak. He told Mr. Bobak is there. And Mr. Bruston, as the named lead partner, he told himself, I better get there right away or I'm at risk of losing this client. I mean, he told himself, so he hurried himself. Unlike the other case, he's not hurrying at the request of the employer. He is the employer. No, the employer is Bruston and Lundblad. And he happens, it's a little confusing in that regard, but he's hurrying at the firm's policy is to not let clients of this magnitude wait. That's the firm's policy, get there. And he got there. Could he have talked to him on the phone? Mr. Bruston did not think so. The fact that he's the head guy and it is irrelevant in this case. Miss Rosen, your time is up. I'm done. Thank you so much. Well, thank you, counsel Bowes for your arguments in this matter.